UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GEORGE WYATT ELMS, and TRAVIS KLYN,<br><br>                              Appellants,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>                              Appellee. | Case No. 3:20-cv-00253-MMD-CLB<br>(Appeal from<br>Case No. 3:20-mj-00036-CLB)<br><br>ORDER |

**I.      SUMMARY**

This is an appeal from Magistrate Judge Carla L. Baldwin's order in *U.S. v. Elms*, Case No. 3:20-mj-00036-CLB, ECF No. 24 (D. Nev. Filed April 1, 2020) ("*Underlying Case*") granting the government's motion to continue Appellants George Wyatt Elms and Travis Klyn's[1] preliminary hearings and extending the deadline by which their indictments must issue (the "Order").[2] (ECF No. 1.) Because the Court is persuaded by Appellants' argument that Judge Baldwin clearly erred in the Order—and as further explained below—the Court will vacate the Order and remand this case to Judge Baldwin with instructions to immediately release Elms and Klyn under 18 U.S.C. § 3060(d).

///

///

---

[1]Klyn filed a motion to join Elms' appeal. (ECF No. 2.) The government does not oppose Klyn's joinder to the appeal. (ECF No. 5 at 2.) Because Klyn is materially identically situated to Elms, the Court grants his motion to join Elms' appeal, and refers to both of them collectively as Defendants throughout this order.

[2]The government filed a response (ECF No. 5), and Elms filed a reply (ECF No. 6).

## II.    BACKGROUND

The Court issues this order during the pandemic caused by the novel coronavirus known as COVID-19. In the ordinary sense of the word, this is an extraordinary time. But the primary question before the Court here is whether there are extraordinary circumstances specific to this case justifying continuance of Elms and Klyn's preliminary hearings, and whether those circumstances outweigh the interest of justice in not holding people in jail before the government has shown it has probable cause they committed a crime.

Like many courts across the country, the Court has restricted its operations in response to COVID-19, and currently relies on video and teleconferencing technology to conduct the limited hearings that are still occurring during this period of restricted operations. As pertinent to this appeal, the Court promulgated Temporary General Order 2020-05[3] ("TGO 2020-05") on March 30, 2020 to implement certain provisions of the "Coronavirus Aid, Relief, and Economic Security Act" ("CARES Act") authorizing the use of video and telephone conferencing, under certain circumstances and with the consent of the defendant, for various criminal hearings during the course of the COVID-19 emergency. *See* CARES Act, H.R. 748, Public Law No. 116-136.

The *Underlying Case* began two days after the Court issued TGO 2020-05 when the government filed a criminal complaint against Elms and Klyn—for breaking into a hardware store in Winnemucca, Nevada and stealing some 25 firearms. *See Underlying Case*, ECF No. 1 (filed April 1, 2020). Elms and Klyn both had their initial appearances by videoconference. *See id.*, ECF Nos. 4, 5. They also consented to have their preliminary hearings by videoconference. *See id.*, ECF Nos. 22 at 3-4, 23. Nevertheless, in the Order,

---

[3]*Available at* https://www.nvd.uscourts.gov/wp-content/uploads/2020/03/GO-2020-05-re-COVID-19-Remote-Hearings.pdf.

1  Judge Baldwin decided to continue their preliminary hearings instead of holding them by
2  videoconference. (*See* Order.)

3  The Court incorporates Judge Baldwin's description of the procedural history of
4  the *Underlying Case* from the Order, and does not fully recite it here. *See* Order at 1-3.
5  In short, the government requested that Elms and Klyn's preliminary hearings be
6  continued, and its deadline for filing indictments against them be extended. *See*
7  *Underlying Case*, ECF No. 19. Elms and Klyn did not consent to having their preliminary
8  hearings continued (but, again, consented to having them by videoconference), so to
9  grant the government its requested continuance, Judge Baldwin was required to find
10  under the governing legal framework—and did find—"that extraordinary circumstances
11  exist and justice requires the delay[.]" (*See* Order at 3-7.) Judge Baldwin went on to find
12  that the Speedy Trial Act's "ends of justice" standard was also satisfied, for essentially
13  the same reasons she found that "extraordinary circumstances" existed, and also
14  because it is unlikely a functioning grand jury will exist in this district for some time, and
15  thus also extended the government's deadline to file indictments against Elms and Klyn.
16  (*See id.* at 7-9.) This appeal of the Order followed.

17  **III. DISCUSSION**

18  Defendants argue Judge Baldwin's Order is clearly erroneous,[4] so the Court
19  should vacate it, and remand this case with instructions to release them. (ECF Nos. 1, 6.)
20  The government of course responds that Judge Baldwin's Order should be affirmed. (ECF
21  No. 5.) The Court agrees with Defendants.

22  The Court finds that, as Defendants argue (ECF No. 1 at 4-12), Judge Baldwin's
23  factual findings in the Order are clearly erroneous, leading to the legal error of finding

24
25
_____

26  [4]"A district judge may reconsider any pretrial matter referred to a magistrate judge
   in a civil or criminal case under LR IB 1-3, when it has been shown the magistrate judge's
27  order is clearly erroneous or contrary to law." LR IB 3-1(a).
28

extraordinary circumstances exist in this case when she decided to grant the government's requested continuance of Defendants' preliminary hearings over their objections. At a high level, the issue with the Order is that it treats hypothetical arguments from the government as facts specific to this case, and fills in gaps in the government's minimal factual showing in its underlying motion with speculative factual assumptions that may not be true. The Court also finds that Judge Baldwin erred in not making any findings to support her conclusion that justice required delaying Defendants' preliminary hearings. (*Id.* at 12-13; *see also* Order at 3-7.) Moreover, Judge Baldwin erred in extending the government's deadline to file an indictment under the Speedy Trial Act, because her decision was based on the same clearly erroneous factual findings that led to her incorrectly continuing Defendants' preliminary hearings. (*See* Order at 8 ("The Speedy Trial Act's "ends of justice" standard is easily applied here because it is far less demanding than the "extraordinary circumstances" standard set forth in in Fed. R. Crim. P. 5.1(d), which the court has already found to exist.") (citation omitted).)

The Court begins its review with Judge Baldwin's factual findings. She first found the government "will have difficulty preparing for the preliminary hearing given the inherent limitations presented by teleworking and the availability to review documents and evidence." (Order at 6.) But as Defendants argue, this reason does not speak to the prosecutors and law enforcement agents involved in this case, nor does it identify any documents or evidence the government needed to review, nor does it explain why the government needed to review them. (ECF No. 1 at 6-11.) Moreover, the government did not point to anything specific to this case in its underlying motion that supports this finding. *See Underlying Case*, ECF No. 19 at 6-7. The government should have offered something about the specific people and documents involved in the underlying case, why they were unavailable, or what information they were looking for they lacked access to because of teleworking or conditions created by COVID-19. This factual finding is therefore clearly erroneous because it is untethered to factual circumstances specific to this case.

4

Moreover, this finding is problematic because both the governing statute and rule impose a burden on the government[5] to make "a showing that" extraordinary circumstances exist, and justice requires the delay. *See* 18 U.S.C. § 3060(c); *see also* Fed. R. Crim. P. 5.1(d); *see also U.S. v. Fortenberry*, Case No. 2:14-MJ-673-VCF, 2014 WL 6969615, at *2 (D. Nev. Dec. 8, 2014) ("This, however, was the government's burden."). The general statements the government offered untethered to the facts of this case—and upon which Judge Baldwin relied—do not constitute such a showing.

Judge Baldwin next found that necessary documents or witnesses may be in Winnemucca, Nevada, because that is where the alleged offense conduct occurred. *See* Order at 7. This factual finding is erroneous for several reasons. First, the government did not make this argument. *See Underlying Case*, ECF No. 19. Thus, in line with the discussion above, making a factual finding based on a showing the government did not offer ignores the government's burden in seeking a continuance of a preliminary hearing over the defendant's objection. Second, Judge Baldwin appears to have drawn this inference based on the content of the Complaint. (*See* Order at 7 (citing *Underlying Case*, ECF No. 1).) However, Defendants argue that much of the evidence, and many of the witnesses in this case—most notably the case agent—are located in Reno, Nevada. (ECF No. 1 at 10 n.23.) Judge Baldwin's inference may therefore be incorrect. That highlights why a factual finding based on speculation is clearly erroneous. Third, to the extent Judge Baldwin drew this inference from the affidavit attached to the Complaint, the case agent states in that affidavit that he is assigned to the Reno field office, the alleged criminal incident was captured on video, Elms was arrested in Reno, made several phone calls of interest from the Washoe County Detention Center, also in Reno, and the case agent

---

[5]The statute and rule are written to impose this burden on the moving party in the event the defendant does not consent, so, as here, the government is the only party upon whom this burden could be imposed. *See* 18 U.S.C. § 3060(c); *see also* Fed. R. Crim. P. 5.1(d).

found Elms' car in Reno. *See Underlying Case,* ECF No. 1 at 5-16. Thus, even the affidavit attached to the Complaint pointed to at least some evidence and witnesses being in Reno rather than Winnemucca. Her factual finding that necessary witnesses and evidence may be in Winnemucca was clearly erroneous.

Judge Baldwin finally found that it was "unknown whether" some witnesses would be able to join a videoconference hearing, either because they lacked access to the technology or because they would need to travel to prepare for their appearance at a videoconference hearing. (*See* Order at 7.) This finding suffers from two of the flaws identified above as to Judge Baldwin's two other factual findings: (1) the government did not argue it; and (2) it is hypothetical and not tied to any facts or evidence in this case. Thus, this finding is also clearly erroneous. In sum, all three factual findings Judge Baldwin made to support her finding of "extraordinary circumstances" necessary to continue Defendants' preliminary hearings were clearly erroneous. The Court must therefore vacate her legal conclusion based on these erroneous factual findings.

Judge Baldwin only made one additional factual finding to support her determination to extend the deadline for the government to file an indictment—that there had not been a functioning grand jury since mid-March and there likely would not be one for some time. (*See* Order at 7-9.) The Court agrees with that finding, as far as it goes. However, there was no functioning grand jury at the time the government filed the Complaint, and there could have been no reasonable expectation that one would exist 30 days from that date given the Court's reduced operations due to COVID-19. Moreover, TGO 2020-05 was promulgated before this case began. Thus, as Defendants argue, the government should have known it would have to proceed via a preliminary hearing conducted over videoconference, rather than by obtaining an indictment, at the time it filed this case. (ECF No. 1 at 12-14.)

And as Defendants also argue, the issue of Judge Baldwin's reliance on the unavailability of a grand jury is intertwined with the legal error she committed in failing to

6

make any factual findings to support her conclusion that justice favored delaying Defendants' preliminary hearings. (ECF No. 1 at 12-14; *see also* Order at 7.) The basic point is that the government knew or should have known it would have to proceed with a preliminary hearing by videoconference within 14 days from the commencement of this case, but nonetheless moved to continue the preliminary hearings two days before those hearings had to occur. *See Underlying Case*, ECF Nos. 1, 19 (filed on April 1 and April 14, both after TGO 2020-05 had issued); *see also U.S. v. Summerfield*, Case. No. 2:20-cv-00713-APG-BNW, ECF No. 4 at 1 (D. Nev. Apr. 21, 2020) (explaining that the government knew it would have to proceed with a preliminary hearing when it initiated the case, likely by video or teleconference, and therefore "the witnesses and evidence should be available and ready to present in court."). And the government did not provide any reasons for its delay in preparing for the preliminary hearings in its underlying motion beyond the general statements of abstract difficulty discussed above. *See Underlying Case*, ECF No. 19.

The Court can therefore only infer a lack of diligence on the government's part weighing against a finding that justice favored delaying the preliminary hearings. *See Fortenberry*, 2014 WL 6969615, at *2 ("Rule 5.1 does not permit continuance solely to enable the government to avoid a preliminary hearing by securing an indictment[.]") (citation and internal punctuation omitted). But Judge Baldwin reached the opposite conclusion. (*See* Order at 7.) In addition, she did not make any factual findings that appear specific to her conclusion that "justice requires the delay." *See id.* Based on the language of 18 U.S.C. § 3060(c) and Fed. R. Crim. P. 5.1(d), the government should have provided specific reasons why justice required the delay in its motion, and Judge Baldwin should have made specific findings if she found those reasons persuasive. That is in part because—as Defendant argue—preliminary hearings exist to prevent indefinite detention of pretrial detainees. (ECF No. 6 at 2-3.)

7

Finally, the Court is persuaded by Defendants' argument that the caselaw Judge Baldwin relied on in her Order is distinguishable.[6] (ECF No. 1 at 5 n.13; *see also* Order at 4.) To start, the court in *U.S. v. Munoz*, Case No. 20MJ1138-MDD, 2020 WL 1433400, at *1 (S.D. Cal. Mar. 24, 2020) was operating under a temporary general order that suspended "all proceedings under Federal Rule of Criminal Procedure 5.1[,]" and made no reference to an order like TGO 2020-05, which permits preliminary hearings via videoconference with the defendant's consent. *See* TGO 2020-05. The same goes for *U.S. v. Xalteno-Alejo*, Case No. 3:20-MJ-00822-MSB, 2020 WL 1433416, at *1 (S.D. Cal. Mar. 20, 2020). (*See also* Order at 4 (relying on this case).) Similarly, the court in *U.S v. Carrilllo-Villa*, Case No. 20 MAG. 3073, 2020 WL 1644773, at *2 (S.D.N.Y. Apr. 2, 2020) does not appear to have been operating under an order like TGO 2020-05 that permits preliminary hearings to occur by videoconference. Moreover, in *Carrillo-Villa*, the government appears to have made a much more specific showing of the impediments to holding a preliminary hearing then the government did here. *See id.* Thus, the Court also finds *Carrilllo-Villa* distinguishable. (*See also* Order at 4 (relying on this case).)

The government's arguments in response to Defendants' appeal fail to persuade. (ECF No. 5.) To start, the government attempts to buttress Judge Baldwin's Order with reasons for continuances that it did not present to Judge Baldwin. (*Compare id.* at 7-8 (stating that ATF policy prohibits its agents from using the videoconferencing service Zoom), 8-9 (arguing that it is difficult to conduct hearings by videoconference because of

---

[6]For the same reasons described herein, the Court is unpersuaded by the government's reliance on the same set of cases. (ECF No. 5 at 6-7.) The Court also notes the government relies on these cases as examples "regarding the pandemic in general[,]" which is a good illustration of how the government's arguments in this appeal miss the point. (*Id.* at 6.) One of the primary issues with the government's motion in the *Underlying Case* was that it was too generalized and not tied to the facts of this case, but the government continues to make such generalized arguments on appeal. The Court finds these generalized arguments unpersuasive.

technical issues), 11 (noting the government plans to have a detective from Winnemucca available for any preliminary hearing) *with Underlying Case*, ECF No. 19 (declining to mention any of this).) These arguments involving new reasons for the government's requested continuances are inappropriate because the government did not raise them in the *Underlying Case. See United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (holding in the related context of review of a magistrate judge's recommendation on a dispositive issue that "a district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation"); *see also In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 780 (9th Cir. 2014) (noting in the related context of appellate review that "[g]enerally, arguments not raised in the district court will not be considered for the first time on appeal."). If the government had these reasons for seeking a continuance all along, it should have put them in its motion directed to Judge Baldwin.

But the Court will nonetheless address some of the government's unpersuasive arguments in its response, beginning with the government's new arguments about its potential witnesses. (ECF No. 5.) If ATF policy prohibits the case agent from using Zoom, the government could arrange for the case agent to use a device at the U.S. Attorney's office in Reno with appropriate social distancing because the case agent is also located in Reno.[7] (*Id.* at 7-8; *see also Underlying Case*, ECF No. 1 at 5 (stating he is based in Reno).) And as the government is now arguing it is unsure whether the detective in Winnemucca can use Zoom, that highlights the government's lack of diligence, as it has been about a month since the government initiated this case, and answering that question would not take more than a phone call. (ECF No. 5 at 8.) Moreover, as described above,

---

[7]Defendants also point out in their reply that it would be reasonable to assume the ATF agent would have access to a non-agency digital device. (ECF No. 6 at 3.) Indeed, any digital device with a camera would allow one to participate in a Zoom video conference.

because the government bears the burden to show why a continuance is warranted, the government was required to sort out the availability of the detective in Winnemucca before it filed its motion in the *Underlying Case*.

The government also argues that proceeding by videoconference is undesirable, and may involve technical issues. (*Id.* at 8, 10-11.) The Court reiterates that TGO 2020-05 was in place before the government initiated this case, and that it implemented provisions of the CARES Act expressly intended to allow criminal proceedings, including preliminary hearings, to occur by video or teleconference with the defendant's consent. These provisions do not require the government's consent. Moreover, they were expressly adopted in recognition that in-person hearings are no longer prudent given COVID-19—and are temporary, implicitly because in-person hearings are preferable to video or telephonic hearings. *See* TGO 2020-05. In addition, the statute governing preliminary hearings is set up to protect the right of the defendant not to be held indefinitely without probable cause. *See* 18 U.S.C. § 3060(d) (requiring the court release the defendant if the defendant is not given a preliminary hearing within the prescribed time period). In sum, the applicable burdens here all favor criminal defendants—and for good reasons. The government would therefore have to show more than hearings held by videoconference are undesirable to justify a continuance.

Finally, the government insists that it was not inevitable it would have to proceed via preliminary hearings held over videoconference when it initiated this case. (ECF No. 5 at 12-13.) The Court finds this argument unreasonable. In addition to the explanation already provided above, at the time the government initiated this case, the Court had already issued four temporary general orders restricting court operations because of COVID-19, the governor of Nevada had ordered nonessential businesses to close, and

10

ordered everyone to stay home.[8] Under these circumstances, it was unlikely a functioning grand jury would exist for some time. In fact, the government even argued a grand jury would not sit before May 4, 2020 in its motion in the *Underlying Case*. *See Underlying Case*, ECF No. 19 at 3-4, 7-8. Thus, the government should have known it would have to proceed with preliminary hearings remotely at the time it initiated this case, unless it could obtain a continuance.

In closing, the parties agree Defendants' preliminary hearings should have been held on April 16, 2020. (ECF Nos. 1 at 15, 5 at 3.) They were not. And the Court is vacating Judge Baldwin's Order granting continuances of these hearings as clearly erroneous. The governing statute therefore leaves the Court no discretion. Elms and Klyn must be released immediately. *See* 18 U.S.C. § 3060(d).

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that George Wyatt Elms' objection/appeal (ECF No. 1) is sustained.

It is further ordered that Judge Baldwin's Order is vacated.

It is further ordered this case is remanded to Judge Baldwin to immediately release Elms and Klyn from custody under 18 U.S.C. § 3060(d).

It is further ordered that Travis Klyn's motion for joinder (ECF No. 2) is granted.

///

---

[8]*See* State of Nevada, Declaration of Emergency, Directive 010, Stay at Home Order (Issued March 31, 2020), https://nvhealthresponse.nv.gov/wp-content/uploads/2020/04/Declaration-of-Emergency-Directive-010-Stay-at-Home-3-31-20.pdf.

The Clerk of Court is directed to close this case.

DATED THIS 30th day of April 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

12